**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Acton No. 1:24-cv-01076-CNS-KAS

DEREK WILFONG, on behalf of himself
and all others similarly situated,

      Plaintiff,

v.

TTEC SERVICES CORPORATION,

      Defendant.

---

**PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION, EXPEDITED OPT-IN
DISCOVERY, AND COURT-AUTHORIZED NOTICE TO POTENTIAL OPT-IN
PLAINTIFFS**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

I.     INTRODUCTION ................................................................................................ 1

II.    CONDITIONAL CERTIFICATION AND ISSUANCE OF NOTICE TO POTENTIAL OPT-IN PLAINTIFFS IS WARRANTED UNDER SECTION 16(B) OF THE FLSA UPON A "MODEST" SHOWING ......................................... 2

      A.    Conditional certification enables the district court to exercise managerial responsibility over the notice process ..................................... 3

      B.    Managerial control over the notice process should be exercised early ...... 3

      C.    Courts approve conditional certification and notice based only upon a "modest" showing ........................................................................................ 4

III.   PLAINTIFF HAS EASILY SATISFIED HIS "MINIMAL" BURDEN FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE ............ 6

      A.    Plaintiff alleged in the Complaint and submitted a Declaration showing that he and potential opt-ins are similarly situated ..................................... 6

      B.    Existing Opt-in Plaintiffs submitted Declarations showing that they are similarly situated to Representative Plaintiff and the potential opt-ins...... 11

IV.   PLAINTIFF'S PROPOSED OPT-IN DISCOVERY SHOULD BE APPROVED .... 14

V.    THE COURT SHOULD AUTHORIZE PLAINTIFF TO ISSUE NOTICE TO POTENTIAL OPT-INS BY EMAIL AND REGULAR MAIL ................................... 15

VI.   CONCLUSION.................................................................................................. 15

## **TABLE OF AUTHORITIES**

*Abdulina v. Eberl's Temporary Servs., Inc.*,
　　No. 14-cv-00314, 2015 WL 12550929 (D. Colo. April 27, 2025)...........................5

*Barrios v. Suburban Disposal, Inc.*,
　　No. 2:12-CV-03663, 2013 WL 6498086 (D.N.J. Dec. 11, 2013) .........................13

*Beattie v. TTEC Healthcare Solutions, Inc.*,
　　No. 1:18-cv-03098, 2019 WL 2866559 (D. Colo. July 3, 2019); ................... 14, 15

*Bradford v. Bed Bath & Beyond, Inc.*,
　　184 F. Supp. 2d 1342 (N.D. Ga. 2002) ..................................................................3

*Calvillo v. Bull Rogers, Inc.*,
　　267 F. Supp. 3d 1307 (D.N.M. 2017) ...................................................................15

*Chin v. Tile Shop, LLC*,
　　57 F. Supp. 3d 1075 (D. Minn. 2014)....................................................................13

*Colon v. Major Perry St. Corp.*,
　　No. 12-CV-3788, 2013 WL 3328223 (S.D.N.Y. July 2, 2013)..............................13

*Daugherty v. Encanca Oil & Gas (USA), Inc.*,
　　838 F. Supp. 2d 1127 (D. Colo. 2011)..................................................................13

*Durrant v. Shaun's Towing and Recovery, LLC*,
　　No. 17-cv-02932, 2018 WL 11431756, *3 (D. Colo. Nov. 13, 2018).....................5

*Felps v. Mewbourne Oil Co., Inc.*,
　　460 F. Supp. 3d 1232 (D.N.M. 2020) ...................................................................15

*Flynn v. Colonial Mgmt. Group*,
　　No. 1:23-cv-00128, 2023 WL 7165194 (D.N.M. Oct. 31, 2023)..........................13

*Fuentes v. Compadres, Inc.*,
　　No. 17-cv-01180, 2018 WL 2126840 (D. Colo. May 9, 2018) ..............................4

*Goldman v. Radioshack Corp.*,
　　No. 03-cv-32, 2003 WL 21250571 (E.D. Pa. April 16, 2003) ...............................6

*Gonzalez v. Challis*,
　　No. 20-cv-00303, 2020 WL 6946560 (D. Colo. Nov. 25, 2020)............................5

*Hernandez v. Merrill Lynch & Co., Inc*.,
　　No. 11 Civ. 8472, 2012 WL 1193836 (S.D.N.Y. April 6, 2012). .............................. 6

*Hoffmann-La Roche Inc. v. Sperling*,
　　493 U.S. 165, 170 (1989) ........................................................................ 2, 3, 4, 14

*Kane v. Gage Merch. Serv., Inc*.,
　　138 F. Supp 2d 212 (D. Mass. 2001). .................................................................... 3

*Kenney v. Helix Tcs, Inc*.,
　　No. 17-cv-01755, 2021 WL 1634506 (D. Colo. Apr. 27, 2021). ............................ 5

*Khamsiri v. George & Grank's Japanese Noodle Rest. Inc*.,
　　No. 12 Civ. 0265, 2012 WL 1981507 (S.D.N.Y. June 1, 2012). ............................ 4

*Leon v. Diversified Concrete LLC*,
　　No. CV 15-6301, 2016 WL 2825073 (E.D. La. May 13, 2016) ............................ 14

*Levine v. Vitamin Cottage Natural Food Markets Inc*.,
　　No. 20-cv-261, 2020 WL 6546734 (D. Colo. Nov. 6, 2020) ............................ 5, 10

*Lysyj v. Milner Distrib. All., Inc.*,
　　No. 13-cv-01930, 2014 WL 273214 (D. Colo. Jan. 24, 2014) ............................ 13

*Madsen v. SIdwell Air Freight*,
　　No. 1:23-cv-0008-JNP, 2024 WL 1160204 (D. Utah Mar. 18, 2024). .................... 4

*Millin v. Brooklyn Born Chocolate*, *LLC*,
　　No. 19-cv-3346, 2020 WL 2198125 (E.D.N.Y. May 6, 2020) ............................ 15

*Morris v. MPC Holdings, Inc*.,
　　No. 20-cv-02840, 2021 WL 4124506 (D. Colo. Sept. 9, 2021) ........................... 12

*Murphy v. Allstaff Medical Resources, Inc*.,
　　No. 16-cv-2370, 2017 WL 6945036 (D. Colo. June 13, 2017) ............................ 12

*Nehmelman v. Penn Nat'l Gaming, Inc*.,
　　822 F.Supp.2d 745 (N.D. Ill. 2011); ...................................................................... 3

*Nicks v. Koch Meat Co., Inc*.,
　　265 F.Supp.3d 841 (N.D. Ill. 2017) .................................................................... 13

*Norwood v. WBS, Inc.,*
　　No. 15-cv-00622, 2016 WL 7666525 (D. Colo. Sept. 29, 2016) ......... 2, 3, 4, 5, 14

iv

*Pryke v. First Solar*, *Inc.*,
　　No. 3:21-cv-681, 2021 WL 5027565 (N.D. Ohio Oct. 29, 2021). ....................... 15

*Ravenell v. Avis Budget Car Rental, LLC*,
　　No. 08 cv 2113, 2010 WL 2921508 (E.D.N.Y. July 19, 2010).............................. 13

*Thiessen v. Gen. Elec. Capital Corp.*,
　　267 F.3d 1095 (10th Cir. 2001) ....................................................................... 4, 5

*Thomas v. Walmart, Inc.*,
　　No. CV 18-4717, 2019 WL 7041809 (E.D. Pa. Dec. 19, 2019)........................... 13

*Valerio v. RNC Indus., LLC*,
　　314 F.R.D. 61 (E.D.N.Y. 2016)........................................................................... 13

*Warren v. MBI Energy Servs., Inc.*,
　　No. 1:19-cv-00800, 2020 WL 5640617 (D. Colo. Sept. 22, 2020) ..................... 15

## **Statutes**

29 U.S.C. § 216.................................................................................... 1, 2, 4, 15

28 U.S.C. § 256............................................................................................... 4

D.C.Colo.LCivR 7.1 ........................................................................................ 4

Fed. R. Civ. P. 26............................................................................................ 1

Fed. R. Civ. P. 83............................................................................................ 1

Plaintiff Derek Wilfong, on behalf of himself and all others similarly situated, respectfully moves this Honorable Court, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and Fed. R. Civ. P. 26(d) and 83(b), for an Order conditionally certifying this case as a collective action and implementing a procedure, described in the Proposed Order attached hereto as Exhibit 1, whereby prospective opt-in plaintiffs will be notified of Plaintiff's FLSA claims and given an opportunity to join this action as party plaintiffs.

Pursuant to D.C.Colo.LCivR 7.1(a), Plaintiffs' counsel certifies that Plaintiff conferred with Defendant regarding the relief requested in this Motion. Defendant opposes the relief requested.

## I.    INTRODUCTION

Plaintiff, Derek Wilfong, initiated this action as a "collective action" against Defendant TTEC Services Corporation ("Defendant" or "TTEC") as a result of TTEC's practices and policies of not paying its non-exempt employees, including Plaintiff and other similarly situated employees, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rate of pay for all the hours they worked in excess of 40 each workweek, in violation of the FLSA, 29 U.S.C. §§ 201-219. (ECF 1 at ¶ 1).[1] Plaintiff pursues his claims as Representative Plaintiff, on behalf of himself and others similarly situated. He does so pursuant to 29 U.S.C. § 216(b), which provides that "[a]n action to recover the liability" prescribed by the Act for unpaid minimum wages,

---

[1] Plaintiff also asserted a Rule 23 "class action" claim under FLSA-analogous provisions of the Ohio Minimum Fair Wage Standards Act, but Plaintiff is presently only asking the Court to conditionally certify and authorize notice to the FLSA collective.

overtime compensation, and liquidated damages "may be maintained against any employer… by any one or more employees for and on behalf of herself or themselves and other employees similarly situated." Section 216(b) of the FLSA specifies that "[n]o employee shall be a party plaintiff to any action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." Thus, unlike Rule 23 class actions, "plaintiffs who wish to participate in a FLSA collective action must opt in to the action." *Norwood v. WBS, Inc.*, No. 15-cv-00622, 2016 WL 7666525, *1 (D. Colo. Sept. 29, 2016).

Conditional certification is appropriately considered early in an FLSA collective action so that court-authorized notice can be given to potential opt-ins. Notably, in addition to the Representative Plaintiff, five (5) other individuals, Haley Bennett, Natasha Davis, Giana Decicco, Dede Knox, and Samantha Heuerman, have already opted into this case by submitting written consents. (*See* ECF 11 and 12.) Before additional individuals can opt-in, they need to be notified of the present collective action and their right to join. As shown herein, Plaintiff has amply satisfied the "lenient" standard for conditional certification and the issuance of notice. As such, the Court should conditionally certify this action as a collective action and order that notice be given to potential opt-ins of their right and opportunity to join pursuant to 29 U.S.C. § 216(b).

## II. CONDITIONAL CERTIFICATION AND ISSUANCE OF NOTICE TO POTENTIAL OPT-IN PLAINTIFFS IS WARRANTED UNDER SECTION 16(B) OF THE FLSA UPON A "MODEST" SHOWING

The collective action mechanism furthers important policy goals, which were identified by the Supreme Court in *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165,

170 (1989): "A collective action allows ... plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged ... activity." Three essential principles have guided the courts' implementation of these policy goals: (1) conditional certification enables managerial responsibility over the notice process so potential opt-ins can be notified in an efficient and proper way; (2) managerial control over the notice process should be exercised early in a case; and (3) conditional certification and notice should be approved based only upon a "modest" showing that similarly situated employees exist.

**A.** **Conditional certification enables the district court to exercise managerial responsibility over the notice process.**

*Hoffmann-LaRoche* held that in a collective action, the district court "has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170-71. In the Tenth Circuit and elsewhere, district courts routinely play an active role in the opt-in discovery and notice process. *See, e.g.*, *Murphy v. Allstaff Medical Resources, Inc.*, No. No. 16-cv-2370, 2017 WL 6945036, *3-*4 (D. Colo. June 13, 2017); *Norwood*, 2016 WL 7666525, *3; *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F.Supp.2d 745, 766 (N.D. Ill. 2011); *Bradford v. Bed Bath & Beyond, Inc.*, 184 F. Supp. 2d 1342, 1345 (N.D. Ga. 2002); *Kane v. Gage Merch. Serv., Inc.*, 138 F. Supp 2d 212, 215 (D. Mass. 2001).

**B.** **Managerial control over the notice process should be exercised early.**

*Hoffmann-LaRoche* held that "it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice, rather than at some later time."

*Hoffmann-LaRoche*, 493 U.S. at 171. The Supreme Court noted that the benefits of the collective action mechanism "depend on employees receiving accurate and **timely** notice..." *Id.* at 170 (emphasis added). For potential opt-in plaintiffs, time is of the essence. Unlike Rule 23 class actions, the commencement of an FLSA collective action does not toll the running of the statute of limitations for putative members. Rather, an opt-in plaintiff's claim is not commenced until the date their written consent to join is filed with the court. *See* 29 U.S.C. §§ 216(b), 256; *Norwood*, 2016 WL 7666525, *1; *Madsen v. Sldwell Air Freight*, No. 1:23-cv-0008, 2024 WL 1160204, *1 (D. Utah Mar. 18, 2024). "This requires the sending of an accurate and timely notice concerning the pendency of the action so that other 'similarly situated' employees can make an informed decision about whether to join.", *Madsen* at *1; *see also, Khamsiri v. George & Grank's Japanese Noodle Rest. Inc*., No. 12 Civ. 0265, 2012 WL 1981507, *1 (S.D.N.Y. June 1, 2012) ("court-authorized notice is appropriate, to prevent erosion of claims due to the running statute of limitations, as well as to promote judicial economy."). Thus, the Court's early involvement ensures that potential plaintiffs receive timely notice so they may opt-in.

### C.     Courts approve conditional certification and notice based only upon a "modest" showing.

Section 16(b) of the FLSA expressly authorizes a collective action to be maintained "by any one or more employees" on behalf of "themselves and other employees similarly situated." The Tenth Circuit has adopted a two-step analysis for determining whether other employees are similarly situated. *See Thiessen v. Gen. Elec. Capital Corp*., 267 F.3d 1095, 1105 (10th Cir. 2001); *Fuentes v. Compadres, Inc.*, No. 17-cv-01180, 2018 WL 2126840, *2 (D. Colo. May 9, 2018).

"At the first step, prior to discovery, the district court makes a 'notice stage' determination of whether the plaintiffs are similarly situated." *Gonzalez v. Challis*, No. 20-cv-00303, 2020 WL 6946560, *2 (D. Colo. Nov. 25, 2020). "For conditional certification at the notice stage, the Tenth Circuit 'require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Id.* at *2 (quoting *Thiessen*, 267 F.3d at 1102). This is a "minimal" burden. *Murphy v. Allstaff Medical Resources, Inc.*, No. 16-cv-2370, 2017 WL 6945036, *2 (D. Colo. June 13, 2017). "At the notice stage, the Court 'does not weigh evidence, resolve factual disputes, or rule on the merits of the plaintiffs' claims.'" *Kenney v. Helix Tcs, Inc*., No. 17-cv-01755, 2021 WL 1634506, *2 (D. Colo. Apr. 27, 2021). Instead, "[t]he court makes this initial determination relying upon the allegations in the complaint and any supporting affidavits filed by the plaintiffs." *Levine v. Vitamin Cottage Natural Food Markets Inc*., No. 20-cv-261, 2020 WL 6546734, *2 (D. Colo. Nov. 6, 2020) (*citing Thiessen*, 267 F.3d at 1102). Only a "modest showing" is required. *Durrant v. Shaun's Towing and Recovery, LLC*, No. 17-cv-02932, 2018 WL 11431756, *3 (D. Colo. Nov. 13, 2018).

Thus, "[c]ertification at this step is conditional, and the standard of proof 'is a lenient one that typically results in class certification,' allowing notice to be sent to the putative class members and discovery to be undertaken." *Norwood*, 2016 WL 7666525, *1. It is only at the second step (the "decertification" stage)—which occurs after notice is issued, the opt-in plaintiffs join, and discovery has taken place—that the court applies a stricter standard to determine whether plaintiffs are, in fact, "similarly situated". *Abdulina v. Eberl's Temporary Servs., Inc*., No. 14-cv-00314, 2015 WL 12550929, *3, *6 (D. Colo.

April 27, 2025); *Goldman v. Radioshack Corp*., No. 03-cv-32, 2003 WL 21250571, *8 (E.D. Pa. April 16, 2003) ("[a] fact-specific inquiry is conducted only after discovery and a formal motion to decertify the class is brought... It is simply premature to do so now because we lack sufficient evidence to conduct a more rigorous inquiry"). *Hernandez v. Merrill Lynch & Co., Inc*., No. 11 Civ. 8472, 2012 WL 1193836, *4 (S.D.N.Y. April 6, 2012). ("The burden imposed at this first 'conditional certification' stage is minimal precisely because the second step allows for a full review of the factual record developed during discovery to determine whether opt-in plaintiffs are *actually* 'similarly situated'…").

### III. PLAINTIFF HAS EASILY SATISFIED HIS "MINIMAL" BURDEN FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE

More than sufficient evidence exists to show that the potential opt-ins are similarly situated such that prompt notice of this collective action should be given. Representative Plaintiff provided substantial allegations in the Complaint and submitted a declaration showing that he and other potential opt-ins are similarly situated. (Ex. 2, Declaration of Representative Plaintiff.) Moreover, the 5 Opt-In Plaintiffs have also submitted declarations that cooberate the substantial allegations in the Complaint and Representative Plaintiffs' Declaration, and further demonstrate that other employees are similarly situated to Representative Plaintiff. (Ex. 3, Declarations of Opt-In Plaintiffs.)

### A. Plaintiff alleged in the Complaint and submitted a Declaration showing that he and potential opt-ins are similarly situated.

Representative Plaintiff defines the proposed FLSA collective class as follows:

> All former and current customer service representatives, and persons with jobs performing substantially identical functions and/or duties to customer service representatives, employed by TTEC Services Corporation in the United States at any and all times within the three (3) year period prior to the filing of this lawsuit.

(Ex. 2 at ¶ 18; *see also* ECF 1 at ¶ 61.) In the Complaint, Representative Plaintiff provided substantial allegations showing that he and the putative FLSA collective are similarly situated. First, they were all employed by TTEC as customer service representatives or in positions performing the same or substantially identical functions or duties as customer service representatives and were subject to the same policies and procedures. (ECF 1 at ¶¶ 20, 21, 61.) Second, they were classified as non-exempt employees. (*Id.* at ¶ 23.) Third, they were paid an hourly wage. (*Id.* at ¶ 24.) Fourth, they were scheduled to work 40 hours per week, but regularly worked in excess of 40 hours per week. (*Id.* at ¶¶ 25-27.) Fifth, TTEC subjected them to the same policies and practices of only paying them for work performed while completely logged in to TTEC's computer systems, software applications, and phone system. (*Id.* at ¶¶ 46-48.) Sixth, in violation of the FLSA, TTEC did not pay them for the time it required them to spend on the following: (a) starting and logging into TTEC's computer systems, software applications, and phone system (*Id.* at ¶¶ 28-36); (b) shutting down and logging out of TTEC's computer systems, software applications, and phone system (*Id.* at ¶¶ 37-45); and (c) working while not completely logged into TTEC's computer systems, software applications, and phone system. (*Id.* at ¶¶ 46-48). Seventh, they regularly worked more than 40 hours per workweek, and the unpaid work was in addition to the 40 or more hours they worked while clocked-in for their scheduled shift, and thus, constituted overtime hours worked. (*Id.* at ¶¶ 35, 44, 50.) Eighth, as a result of TTEC's practice and policy, they were not paid for all hours worked, including overtime compensation at the rate of one and a half times their hourly rate for the hours worked in excess of 40 each workweek. (*Id.* at ¶¶ 49-50.)

In addition to the allegations in the Complaint, Representative Plaintiff submitted a declaration showing that he and the potential opt-in plaintiffs are similar in these regards. Representative Plaintiff declared:

1.  I have been employed by TTEC Services Corporation ("TTEC") as a customer service representative since April 28, 2011. From approximately April 28, 2011 to April 2020, I worked at TTEC's call center in Westlake, Ohio. From approximately April 2020 through the present, I have been working from my home in La Grange, Ohio.

2.  As a TTEC customer service representative, I was/am paid on an hourly basis.

3.  As a TTEC customer service representative, I was/am typically scheduled to work 40 hours per week.  However, I regularly worked/work more than 40 hours per week. I estimate that, since April 19, 2021, I have worked between approximately 43 and 45 hours or more per week.

4.  During my employment, TTEC paid/pays me only for work performed while I am completely logged into TTEC's computer systems, software applications, and phone system.

5.  TTEC did not, and does not, pay me for the time spent each day starting and logging into the computer systems, software applications, and phone system.

6.  TTEC also did not, and does not, pay me for the time I spend each day shutting down and logging out of the computer systems, software applications, and/or phone system.

7.  Additionally, TTEC did not (and does not) pay me for work I am required to perform when not completely logged into call programs.

8.  I estimate that, since April 19, 2021, I have spent, on average, approximately 20 to 30 minutes or more each workday performing this unpaid work, including approximately 10 to 20 minutes or more before each shift, and approximately 5 to 10 minutes after each shift.

9.  The time I have spent performing this unpaid work was in addition to the 40 or more hours I regularly worked each workweek while on the clock for my scheduled shifts.

10. TTEC knew and knows that I have been performing the unpaid work because TTEC required/requires me to perform it, I have reported it to TTEC, and

supervisors have observed me performing it.

11. TTEC could have precisely recorded my unpaid work for payroll purposes simply by allowing me clock in before I started and logged into the computer systems, applications, and phone system, and allowing me to clock out after I shut down and logged out of TTEC's computer systems, applications, and phone system.

12. As a result of TTEC's practices and policies, I have not been fully compensated for all of the time I actually worked, including all of the overtime hours I worked over 40 in a workweek.

13. TTEC did this to other customer service representatives who I talked to, and I believe I am similarly situated to these employees.

14. Additionally, TTEC did not and does not include bonuses in our regular rates of pay for purposes of calculating overtime compensation, which bonuses TTEC paid/pays customer service representatives, including myself, as an incentive for hard work and production, and which were/are nondiscretionary and based on predetermined matrices.

15. My statements here are based upon my own experiences, and upon observations of, and conversations with, other TTEC employees who engaged in the same activities and work that I performed/perform as a customer service representative. I know the experiences of others are similar to mine because I have talked with them.

16. I also attended virtual meetings and been a part of Teams chats with trainers, supervisors, and other customer service representatives from various different states. Other customer service representatives complained, during virtual meetings I attended and/or Teams chats that I was a part of, about the same unpaid work while not clocked-in, including the time they had to spend logging into TTEC's computer systems, software applications, and/or phone system.

17. I seek to recover unpaid overtime compensation from TTEC under the Fair Labor Standard Act, and consent to be a named Plaintiff in the above-captioned collective action. I agree to be bound by any adjudication of this action by the Court, and any collective action settlement approved by this Court as being fair, adequate, and reasonable.

18. I consent to bring this action on behalf of myself and a class of similarly situated employees (Opt-In Plaintiffs) defined as follows:

> All former and current customer service representatives, and persons with jobs performing substantially identical functions and/or duties to

customer service representatives, employed by TTEC Services Corporation in the United States at any and all times within the three (3) year period prior to the filing of this lawsuit.

19. I believe that I am similarly situated to the class because, during my employment with TTEC, I and the class members:

(a)  were employed by TTEC as customer service representatives or in substantially similar position(s);

(b)  performed substantially identical functions and/or duties;

(c)  were paid on an hourly basis;

(d)  were classified by TTEC as non-exempt employees;

(e)  were paid only for work performed between our scheduled shift start and stop times;

(f)  were not paid for starting and logging into TTEC's computer systems, numerous software applications, and phone system at the start of our shifts;

(g)  were not paid for shutting down and logging out of TTEC's computer systems, numerous software applications, and phone system at the end of our shifts;

(h)  were not pay me for work performed when not completely logged into call programs;

(i)  worked in excess of 40 hours in a workweek; and

(j)  were not paid overtime at the rate of one and one-half times our regular rates for all of the hours we worked over 40 in a workweek.

(Ex. 2, Declaration of Representative Plaintiff.)

Thus, Plaintiff has sufficiently alleged that he and the potential opt-in plaintiffs are similarly situated. These substantial allegations alone warrant conditional certification. *See Murphy v. Allstaff Medical Resources, Inc.*, No. 16-cv-2370, 2017 WL 6945036, *2 (D. Colo. June 13, 2017) ("Looking solely to the allegations of the complaint and the declaration of Plaintiff, this Court finds that Plaintiff has satisfied the minimal burden necessary for the conditional certification of a collective action under § 216(b)."); *Levine v. Vitamin Cottage Natural Food Markets Inc.*, No. 20-cv-261, 2020 WL 6546734, *3 (D. Colo. Nov. 6, 2020) ("courts in this district have found a single employee's affidavit, coupled with the allegations in a complaint, sufficient to satisfy the 'substantial allegations'

requirement for conditional certification.").

**B.** **Existing Opt-in Plaintiffs submitted Declarations showing that they are similarly situated to Representative Plaintiff and the potential opt-ins.**

In addition to the Complaint and the sworn statements of Representative Plaintiff, the Opt-In Plaintiffs, Haley Bennett, Natasha Davis, Giana Decicco, Samantha Heuerman, and Dede Knox all provided declarations establishing that they are similarly situated to Representative Plaintiff and the potential opt-ins. (Ex. 3, Declarations of Opt-In Plaintiffs.) The 5 Opt-in Plaintiffs were employed by TTEC as customer service representative at 5 different locations across the United States (*see Id*. at ¶¶ 1, 3 of each Declaration), and like Representative Plaintiff, all 5 of the Opt-in Plaintiffs declared:

4. I was paid an hourly wage and was scheduled to work 40 hours per week. However, I regularly worked more than 40 hours per week.

5. During my employment, TTEC paid me only for work performed while I was completely logged into TTEC's computer systems, software applications, and/or phone system.

6. TTEC did not pay me for the time spent each day starting and logging into the computer systems, software applications, and/or phone system.

7. TTEC also did not pay me for the time spent each day shutting down and logging out of the computer systems, software applications, and/or phone system.

8. Additionally, TTEC did not pay me for work I performed when I was not logged into call programs.

9. I was required by TTEC to perform this unpaid work. I performed this unpaid work every workday, and it constituted a part of my fixed and regular working time.

10. TTEC knew that I performed the unpaid work because TTEC required me to perform it and supervisors observed me performing it.

11. TTEC could have precisely recorded my unpaid work for payroll purposes

simply by allowing me clock in before I started and logged into the computer systems, applications, and phone system, and allowing me to clock out after I shut down and logged out of TTEC's computer systems, applications, and phone system.

12. As a result of TTEC's practices and policies, I was not fully compensated for all of the time I actually worked, including all of the overtime hours I worked over 40 in a workweek.

13. My statements here are based upon my own experiences, and upon observations of other TTEC employees who engaged in the same activities and work that I performed. I know the experiences of others are similar to mine because I talked with them, and I attended video conferences with them during which they also complained to trainers and/or supervisors about the unpaid work, including time spent each day starting and logging into the computer systems, software applications, and phone system.

14. I am sure that other customer service representatives, and other employees with jobs performing substantially identical functions and/or duties to customer service representatives, would join this case if they received Court-approved notice.

 (Ex. 3, Declarations of Opt-In Plaintiffs.)

The Complaint and the 6 Declarations—from Representative Plaintiff and each of the 5 Opt-In Plaintiffs, are more than sufficient to warrant conditional certification of the proposed FLSA collective. *See Kenney v. Helix Tcs, Inc*., No. 17-cv-01755, 2021 WL 1634506, *3 (D. Colo. April 27, 2021) (granting conditional certification based on Complaint, representative plaintiff's declaration, and declaration of 1 other person); *Morris v. MPC Holdings, Inc*., No. 20-cv-02840, 2021 WL 4124506, *2 (D. Colo. Sept. 9, 2021) (granting conditional certification based solely on allegations in Complaint and affidavits from the named Plaintiff and 1 other employee.); *Murphy v. Allstaff Medical Resources, Inc.*, No.16-cv-2370, 2017 WL 6945036, *2 (D. Colo. June 13, 2017) ("Looking solely to the allegations of the complaint and the declaration of Plaintiff, this Court finds that Plaintiff

has satisfied the minimal burden necessary for the conditional certification of a collective action under § 216(b).”); *Daugherty v. Encanca Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1133 (D. Colo. 2011) (finding allegations by plaintiff that he did not receive overtime pay and that he believed others did not receive overtime pay, coupled with his declaration and that from 1 other employee, sufficient to meet burden for conditional certification); *Lysyj v. Milner Distrib. All., Inc.*, No. 13-cv-01930, 2014 WL 273214, *3 (D. Colo. Jan. 24, 2014) (“Even looking solely to the allegations of the complaint and the affidavit of David Rhoads, this Court finds that Plaintiffs have satisfied the minimal burden necessary to the conditional certification of a collective action under § 216(b).”); *Flynn v. Colonial Mgmt. Group*, No. 1:23-cv-00128, 2023 WL 7165194, *2, *6 (D.N.M. Oct. 31, 2023) (granting conditional certification based on the allegations in the Complaint and the declarations of the named Plaintiff and 2 other former employees).[2]

---

[2] *See also, Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 74-75 (E.D.N.Y. 2016) (granting conditional certification based on named Plaintiffs’ allegations and declaration of 1 other employee); *Colon v. Major Perry St. Corp.*, No. 12-CV-3788, 2013 WL 3328223, *6 (S.D.N.Y. July 2, 2013) (“[I]t is beyond dispute that courts regularly determine that two or three declarations corroborating each other constitute a sufficient amount of evidence to conditionally certify a collective action”)*; Ravenell v. Avis Budget Car Rental, LLC*, No. 08 cv 2113, 2010 WL 2921508, *1 (E.D.N.Y. July 19, 2010) (granting conditional certification nationwide based on declarations of plaintiffs working in 3 states); *Barrios v. Suburban Disposal, Inc.*, No. 2:12-CV-03663, 2013 WL 6498086, *2 (D.N.J. Dec. 11, 2013) (declarations of 3 employees sufficient for conditional certification); *Thomas v. Walmart, Inc.*, No. CV 18-4717, 2019 WL 7041809, *2 (E.D. Pa. Dec. 19, 2019) (granting conditional certification based on affidavits of named plaintiff and 1 other employee stating: “Plaintiff not only submitted her own affidavit, but also provided a corroborating affidavit of a colleague who worked at a separate location…”); *Nicks v. Koch Meat Co., Inc.*, 265 F.Supp.3d 841, 853 (N.D. Ill. 2017) (“Plaintiffs need not identify a specific, written policy... It is sufficient that they have provided multiple declarations indicating that Defendants had a de facto practice at more than one Complex of not paying for overtime hours”); *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1083 (D. Minn. 2014) (declaration of named plaintiff and 2 other former employees sufficient for conditional certification);

Simply put, Plaintiff easily meets his minimal burden at this stage, and thus, conditional certification of the FLSA collective and court-authorized notice is warranted.

## IV. PLAINTIFF'S PROPOSED OPT-IN DISCOVERY SHOULD BE APPROVED

To facilitate prompt notice to the potential opt-ins, Representative Plaintiff has submitted herewith a proposed opt-in discovery request seeking the identity, contact information, and pertinent employment dates of all former and current customer service representatives and persons with jobs performing substantially identical functions and/or duties to customer service representatives employed by TTEC within the last 3 years. (Ex. 4 - Opt-In Discovery). The requested discovery is needed in order to issue notice of this lawsuit to the potential opt-ins. In *Hoffmann-La Roche*, the Supreme Court flatly affirmed the district court's approval of both interrogatories seeking contact information for potential opt-ins and court-facilitated notice to them. 493 U.S. at 169-170. Moreover, Plaintiff's request for the opt-in discovery to be produced within 14 days of this Court's Order is reasonable. The statute of limitations for potential opt-ins is running and prompt notice is necessary for them to receive the full benefit of the collective action mechanism and economically and efficiently vindicate their FLSA rights. Indeed, this Court has frequently ordered employers to produce such information for potential opt-ins "within 14 days" of granting conditional certification. *See Beattie v. TTEC Healthcare Solutions, Inc.*, No. 1:18-cv-03098, 2019 WL 2866559, *3 (D. Colo. July 3, 2019); *Murphy*, 2017 WL 6945036, *4; *Norwood*, 2016 WL 7666525, *3.

---

*Leon v. Diversified Concrete LLC*, No. CV 15-6301, 2016 WL 2825073, *4 (E.D. La. May 13, 2016) (plaintiff's declaration and complaint sufficient for conditional certification).

## V. THE COURT SHOULD AUTHORIZE PLAINTIFF TO ISSUE NOTICE TO POTENTIAL OPT-INS BY EMAIL AND REGULAR MAIL

Plaintiff seeks to issue the notice via both email and regular mail, which is necessary to ensure that notice is "timely, accurate, and informative",[3] and Court in this District (including this Court) routinely authorizes notice to potential opt-in plaintiffs via both email and regular mail. *See, e.g.*, *Beattie*, 2019 WL 2866559, *2 ("The Court sees no reason why Plaintiffs should be limited to providing notice by regular mail" and stating "Plaintiffs may provide notice by e-mail and text message as well as by regular mail."); *Murphy*, 2017 WL 6945036, *3; *Warren v. MBI Energy Servs., Inc.*, No. 1:19-cv-00800, 2020 WL 5640617, *4 (D. Colo. Sept. 22, 2020); *Felps v. Mewbourne Oil Co., Inc.*, 460 F. Supp. 3d 1232, 1241 (D.N.M. 2020).

## VI. CONCLUSION

For the foregoing reasons, Representative Plaintiff respectfully requests that this Honorable Court conditionally certify the proposed FLSA class and implement a procedure, set forth in the accompanying proposed order (*see* Ex. 1), whereby potential opt-in plaintiffs are notified of Plaintiff's FLSA claims by issuing the Important Notice to Potential Class Members attached hereto as Exhibit 5, and given an opportunity to join this collective action as party plaintiffs pursuant to 29 U.S.C. § 216(b).

---

[3] Due to the increasingly mobile society in which we live, the migratory nature of workers, and the FLSA's broad remedial purpose, Courts have found that notice by electronic means, in addition to regular mail, is appropriate in FLSA collective actions. *See Calvillo v. Bull Rogers, Inc.*, 267 F. Supp. 3d 1307, 1315 (D.N.M. 2017); *Millin v. Brooklyn Born Chocolate, LLC*, No. 19-cv-3346, 2020 WL 2198125, *3 (E.D.N.Y. May 6, 2020); *Pryke v. First Solar, Inc.*, No. 3:21-cv-681, 2021 WL 5027565, *2-4 (N.D. Ohio Oct. 29, 2021).

Respectfully submitted,

 /s/ *Matthew S. Grimsley*
Matthew S. Grimsley (OH 0092942)
Anthony J. Lazzaro (OH 0077962)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Facsimile: 216-696-7005
matthew@lazzarolawfirm.com
anthony@lazzarolawfirm.com
*Attorneys for Plaintiff and Opt-In Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2024, a copy of the foregoing *Plaintiff's Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs* was sent to all parties by operation of the Court's electronic filing system.  Parties may access the filing through the Court's system.

 /s/ *Matthew S. Grimsley*
Matthew S. Grimsley (0092942)
*Attorney for Plaintiff and Opt-In Plaintiffs*