## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLORADO

**DEREK WILFONG,** on behalf of himself
and all others similarly situated,

               Plaintiff,

      v.

**TTEC SERVICES CORPORATION,**

            Defendant.

No. 1:24-cv-01076-CNS-KAS

## DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION OF CERTAIN PUTATIVE OPT-IN PLAINTIFFS

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................................... 1

II.    BACKGROUND ............................................................................................. 2

     A.     The Arbitration Opt-ins entered into valid arbitration agreements. .............. 2

     B.     The Arbitration Opt-ins agreed to individually arbitrate all claims
         brought in this lawsuit. ..................................................................................... 4

III.   FEDERAL AND STATE LAW COMPEL ARBITRATION ...................................... 4

     A.     The FAA applies. ............................................................................................. 4

     B.     The Arbitration Agreement satisfies Florida, Georgia, and Nevada
         law. ................................................................................................................... 7

     C.     The Arbitration Agreement is neither procedurally nor substantively
         unconscionable. ................................................................................................ 8

          1.     The Arbitration Agreement is Procedurally Fair. ................................. 9

          2.     The Arbitration Agreement is Substantively Fair. .............................. 11

     D.     The Arbitration Opt-ins' class and collective claims are precluded. ......... 13

IV.    CONCLUSION ............................................................................................. 14

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
    513 U.S. 265 (1995) .................................................................................. 6

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) .................................................................................. 5

*Armendariz v. Foundation Health Psychcare*,
    6 P.3d 669 (Cal. 2000) ............................................................................ 10

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) .................................................................................. 6

*Baker v. WestStar Credit Union*,
    No. 221CV02128CDSBNW, 2022 WL 3636484 (D. Nev. Aug. 22,
    2022) ........................................................................................................ 3

*Balcom v. Seattle Serv. Bureau, Inc.*,
    No. 8:23-CV-1624-VMC-AAS, 2024 WL 1239258 (M.D. Fla. Mar. 22,
    2024) ........................................................................................................ 8

*Beattie v. TTEC Healthcare Sols., Inc.*,
    No. 1:18-CV-01574-RM-SKC, 2019 WL 2189481 (D. Colo. May 21,
    2019) .................................................................................................. 4, 13

*Bolanos v. First Invs. Servicing Corp.*,
    No. 10-23365-CIV, 2010 WL 4457347 (S.D. Fla. Oct. 29, 2010) .............. 3

*Caley v. Gulfstream Aerospace Corp.*,
    428 F.3d 1359 (11th Cir. 2005) ................................................................ 3

*Cir. City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) .............................................................................. 5, 6

*El Jen Med. Hosp., Inc. v. Tyler*,
    139 Nev. Adv. Op. 36, 535 P.3d 660 (Nev. 2023) .................................... 8

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018) ................................................................................ 13

*Eyth v. Spectrum Charter Commc'ns, Inc.*,
    No. 8:23-CV-1878-CEH-TGW, 2024 WL 1833011 (M.D. Fla. Apr. 26,
    2024) ........................................................................................................ 7

*Fox v. TTEC Servs. Corp.*,
    No. 4:19-CV-00037-KGB, 2020 WL 13882107 (E.D. Ark. Apr. 10,
    2020) .................................................................................................................. 4, 12

*Green v. CVS Health*,
    No. 3:23-CV-00076-TES, 2023 WL 7287202 (M.D. Ga. Nov. 3, 2023) ...................... 8

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ..................................................................................................... 4

*Innovative Images, LLC v. Summerville*,
    309 Ga. 675 (Ga. 2020) ............................................................................................. 7

*Jajack v. New York Life Ins. Co.*,
    No. 20-CV-01590-MEH, 2020 WL 8269316 (D. Colo. Dec. 28, 2020) ....................... 7

*Jenkins-Naudain v. ABM Indus., Inc.*,
    No. 222CV01826CDSNJK, 2023 WL 4636887 (D. Nev. July 20, 2023) ............. 9, 10

*Kindred Nursing Centers Ltd. P'ship v. Clark*,
    581 U.S. 246 (2017) .................................................................................................... 6

*Kindred v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*,
    116 Nev. 405, 996 P.2d 903 (Nev. 2000) ................................................................... 8

*Levine v. Vitamin Cottage Nat. Food Markets, Inc.*,
    No. 20-CV-00261-STV, 2021 WL 4439800 (D. Colo. Sept. 27, 2021) ....................... 7

*M.P. v. Guiribitey Cosm. & Beauty Inst., Inc.*,
    No. 3D22-1927, 2023 WL 6450457 (Fla. Dist. Ct. App. Oct. 4, 2023)..................... 11

*MacMullin v. Findlay*,
    No. 3D23-1703, 2024 WL 3586850 (Fla. Dist. Ct. App. July 31, 2024)..................... 9

*Mazile v. Larkin Univ. Corp.*,
    No. 1:23-CV-23306, 2024 WL 3495320 (S.D. Fla. July 22, 2024) ...................... 9, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)..................................................................................................... 4, 5

*Park v. E*TRADE Fin. Corp. Servs., Inc.*,
    No. 2:23-CV-69-RWS, 2023 WL 11779917 (N.D. Ga. July 25, 2023)....................... 9

*Payne v. Savannah Coll. of Art & Design, Inc.*,
    81 F.4th 1187 (11th Cir. 2023) ........................................................................... 9, 11

*Shotts v. OP Winter Haven, Inc.*,
    86 So. 3d 456 (Fla. 2011) ........................................................................................... 7

*Smith v. Sanders Realty Holdings, LLC*,
No. 120CV03617ELRCMS, 2021 WL 2651816 (N.D. Ga. Jan. 15,
2021) .......................................................................................................................... 8

*Stemmen v. TTEC Gov't Sols., LLC*,
No. 2:23-CV-08806-SK, 2024 WL 1641978 (C.D. Cal. Mar. 7, 2024) .................. 4, 12

*Tallman v. Eighth Jud. Dist. Ct.*,
131 Nev. 713 (Nev. 2015) ........................................................................................ 7

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022) ............................................................................................. 5, 6

*Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
13 F.3d 330 (10th Cir. 1993) .................................................................................. 5

**STATUTES**

9 U.S.C. § 2 ................................................................................................... passim

9 U.S.C. § 4 ....................................................................................................... 5

Fair Labor Standards Act ................................................................................. 1, 4

Federal Arbitration Act ............................................................................... passim

Ohio Minimum Fair Wage Standards Act ............................................................ 1

## I.    INTRODUCTION

Pursuant to the Federal Arbitration Act ("FAA"), Defendant TTEC Services Corporation ("TTEC") moves to compel putative opt-in plaintiffs Haley Bennett, Natasha Davis, and Samantha Heuerman (the "Arbitration Opt-Ins") to fulfill their contractual obligations to arbitrate claims asserted in this lawsuit on an individual basis.

The Arbitration Opt-Ins each signed a binding Arbitration Agreement with TTEC that governs this dispute. This Motion is necessary because the Arbitration Opt-Ins refuse to honor that Arbitration Agreement, in which they agreed to individually arbitrate all claims relating to their employment with TTEC. Specifically, the Arbitration Opt-Ins assert: (1) a putative collective claim for violations of the Fair Labor Standards Act and; (2) a putative class claim for violation of the Ohio Minimum Fair Wage Standards Act.[1] Rather than submit these employment-related claims to individual arbitration, however, and in violation of their obligations under Arbitration Agreement, the Arbitration Opt-Ins attempt to join this action.

The Arbitration Agreement is enforceable. Each Arbitration Opt-In voluntarily signed the Arbitration Agreement after ample opportunity to review its terms and consult with legal counsel. The Arbitration Agreement provides for a neutral arbitrator, adequate discovery, and other protections recognized to ensure fairness under applicable law. Because the Arbitration Agreement is enforceable and the present claims are within its scope, the Arbitration Opt-Ins should be compelled to honor their contractual commitment to arbitrate. TTEC requests the Court issue an Order dismissing the claims of any Opt-In who signed an Arbitration Agreement.

---

[1] None of the Arbitration Opt-Ins claim to have lived or worked in Ohio.

## II.     BACKGROUND

TTEC is an American customer experience technology and services company headquartered in Greenwood Village, Colorado. Exhibit 1, Declaration of Gretchen Pfeifer ("Pfeifer Decl.") ¶ 2. TTEC provides customer service support through employees who either work at customer care contact centers or work remotely around the country. *Id*. TTEC's parent company is TTEC Holdings, Inc. *Id*.

### A.     The Arbitration Opt-ins entered into valid arbitration agreements.

On or around January 30, 2023, Bennett began working for TTEC as a Bank of America Fraud CSR I in Nevada. *Id*. ¶¶ 6, 10. During the application process, on January 14, 2023, Bennett reviewed, completed, and signed the Arbitration Agreement through her individual Taleo Account. *Id*. ¶¶ 14-15.

On or around January 20, 2022, Davis began working for TTEC as a Bank of America Claims Processing CSR I in Georgia. *Id*. ¶¶ 6, 11. During the application process, on January 6, 2022, Plaintiff reviewed, completed, and signed the Arbitration Agreement through her individual Taleo Account. *Id*. ¶¶ 14-15.

On or around January 20, 2022, Heuerman began working for TTEC as a Bank of America Claims Processing CSR I in Florida. Id. ¶¶ 6,12. During the application process, on January 5, 2022, Heuerman reviewed, completed, and signed the Arbitration Agreement through her individual Taleo Account. *Id*. ¶¶ 14-15.

To view and sign the Arbitration Agreement, each Arbitration Opt-In logged in to her individual Taleo account using her username and unique password that she created. *Id*. ¶¶ 8-9, 13. The Taleo system required applicants to electronically sign the Arbitration Agreement by typing in their full name and a unique identifier that ensured that they were

the one who applied the signature.[2] *Id*. ¶¶ 13-15. The eSignature page is named and coded within Taleo as "eSignature_United_States". *Id*. ¶ 13. TTEC gave each applicant as much time as the applicant wished to read, reread, and consider the Arbitration Agreement before applying their signature. *Id*. Applicants were also advised in writing and encouraged to review the Arbitration Agreement with legal counsel of their choosing. *Id*. ¶ 13. Each Arbitration Opt-In entered her full name and unique identifier, thereby entering into the Arbitration Agreement. *Id*. ¶ 14. TTEC has no information suggesting that any Arbitration Opt-In was not the individual who used her username and unique password to access Taleo and electronically sign the Arbitration Agreement. *Id*. ¶ 15. Also, Taleo captured the location of the IP address at the time the applicant signed the Arbitration Agreement. *Id*. ¶ 16. The IP address captured for the Arbitration Opt-Ins' profiles (Las Vegas, Nevada for Bennett; Atlanta, Georgia metro area for Davis; Orlando, Florida metro area for Heuerman) are consistent with the address information TTEC had on file for each, as well as the address information each provided in their consent forms. *Id*. ¶ 16; Dkt. 11-1, 11-2, 12-1; Exhibit F to Pfeifer Decl. In addition, the Taleo system produces electronic signature records that list the date of signature, time of signature, and unique identifier that each Arbitration Opt-In used to sign the arbitration agreement. Id. ¶ 17; Exhibit G to Pfeifer Decl.

---

[2] TTEC's signature is not necessary to make the Arbitration Agreement enforceable. *See, e.g., Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) (applying Georgia law and citing "overwhelming weight of authority" in support of conclusion that the Federal Arbitration Act does not require a signature); *Baker v. WestStar Credit Union*, No. 221CV02128CDSBNW, 2022 WL 3636484, at *3 (D. Nev. Aug. 22, 2022) ("a signature is not required"); *Bolanos v. First Invs. Servicing Corp.*, No. 10-23365-CIV, 2010 WL 4457347, at *1 (S.D. Fla. Oct. 29, 2010) ("The Arbitration Agreement here is indisputably in writing, and nothing in the agreement indicates that it must be signed to be enforceable.").

**B.      The Arbitration Opt-ins agreed to individually arbitrate all claims brought in this lawsuit.**

The Arbitration Agreement entered between TTEC[3] and each Arbitration Opt-In states in pertinent part: "[T]he Parties agree to arbitrate all disputes arising out of or relating to their employment relationship…" Exhibit D to Pfeifer Decl., Arbitration Agreement ("Arb. Agmt.") ¶ 1.2. Each Arbitration Opt-In further agreed "to bring any dispute in arbitration on an individual basis only, and not on a class and/or collective basis." *Id.* ¶ 1.4. Finally, the Arbitration Agreement's definition of "covered disputes" explicitly includes "wages, bonuses, commissions … and minimum wage and overtime or other compensation or any other monies claimed to be owed … and claims arising under the … Fair Labor Standards Act". *Id.* ¶ 4.1. The Arbitration Opt-Ins nevertheless seek to join a collective action alleging violations of the Fair Labor Standards Act.

## III.    FEDERAL AND STATE LAW COMPEL ARBITRATION

**A.      The FAA applies.**

The Arbitration Opt-Ins' claims must be compelled to arbitration, as mandated by the FAA. In deciding whether to compel arbitration, courts generally must determine two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the agreement covers the dispute in question. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Not only does the FAA express a strong federal policy in favor of arbitration where a written arbitration agreement exists, it compels the

---

[3] The Arbitration Agreement explicitly includes TTEC Holdings, Inc.'s "subsidiaries and affiliates" as parties. Arb. Agmt. p. 1. Courts enforce the Arbitration Agreement with respect to subsidiaries such as Defendant TTEC Services Corporation. *See, e.g.*, *Stemmen v. TTEC Gov't Sols., LLC*, No. 2:23-CV-08806-SK, 2024 WL 1641978, at *5 (C.D. Cal. Mar. 7, 2024); *Fox v. TTEC Servs. Corp.*, No. 4:19-CV-00037-KGB, 2020 WL 13882107, at *1 (E.D. Ark. Apr. 10, 2020); *Beattie v. TTEC Healthcare Sols., Inc.*, No. 1:18-CV-01574-RM-SKC, 2019 WL 2189481, at *1 (D. Colo. May 21, 2019).

enforcement of a written arbitration agreement if it "evidence[es] a transaction involving interstate commerce." 9 U.S.C. § 2. The FAA represents "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). It provides, in pertinent part: "A written provision . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be ***valid, irrevocable, and enforceable*** . . ." 9 U.S.C. § 2 (emphasis added). Specifically, "arbitration agreements are favored and are to be broadly construed with doubts being resolved in favor of coverage." *Zink v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 13 F.3d 330, 332 (10th Cir. 1993). Pursuant to this policy, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Section 4 of the FAA expressly authorizes "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition [the court] . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

The Supreme Court recently reaffirmed that the FAA is "[a]n enforcement mandate, which renders agreements to arbitrate enforceable as a matter of federal law…" *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022). Arbitration is a matter of contract. "[C]ourts must 'rigorously enforce' arbitration agreements according to their terms, including terms that 'specify with whom [the parties] choose to arbitrate their disputes' and 'the rules under which that arbitration will be conducted." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Applying the FAA in the employment context, the Supreme Court reiterated a strong public policy in favor of arbitration: "Arbitration agreements allow parties to avoid the costs of litigation, a benefit that may be

of particular importance in employment litigation, which often involves smaller sums of money than disputes concerning commercial contracts." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 123 (2001). The FAA "preempts any state rule discriminating on its face against arbitration—for example, a law 'prohibit[ing] outright the arbitration of a particular type of claim.'" *Viking River*, 596 U.S. at 650 (quoting *Kindred Nursing Centers Ltd. P'ship v. Clark*, 581 U.S. 246, 251 (2017)).

The Arbitration Agreement expressly states, "This Agreement is governed by the Federal Arbitration Act…" Arb. Agmt. "Recitals." Further, TTEC business involves operations in several states within the United States. Pfeifer Decl. ¶ 2. These national operations plainly affect interstate commerce within the meaning of the FAA. Given that the FAA promotes a "liberal policy favoring arbitration," and that "courts must place arbitration agreements on equal footing with other contracts… and enforce them according to their terms," arbitration is mandatory here.

Even without the explicit contractual reference, the FAA applies by its terms to arbitration provisions in any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The U.S. Supreme Court has interpreted this language as signaling "an intent to exercise Congress' commerce power to the full." *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995); *see also Cir. City Stores*, 532 U.S. at 124 (arbitration agreements between local employees and nationwide companies are subject to the FAA). Here, as Plaintiff alleges in the Complaint, TTEC is a nationwide telecommunications company. ECF 1 ¶¶ 17-18; Pfeifer Decl. ¶¶ 2, 9. It is also undisputed that the Arbitration Opt-Ins are citizens of Florida, Georgia, and Nevada, and TTEC is a citizen of Colorado, and therefore, the employment relationships involved interstate commerce within the scope of the FAA. *See* ECF 1 ¶ 9; ECF 18-3; Pfeifer Decl. ¶¶ 2, 16.

Thus, their employment relationships with TTEC "involved commerce" under the FAA. TTEC respectfully requests that the Court order Arbitration Opt-Ins to arbitrate pursuant to the FAA. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Even if the FAA does not apply, which TTEC does not concede, the Arbitration Agreement should be liberally construed and enforced pursuant to Florida, Georgia, and Nevada law (where the Arbitration Opt-Ins worked). *See, e.g., Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 472 (Fla. 2011) (noting "Florida public policy favors arbitration."); *Innovative Images, LLC v. Summerville*, 309 Ga. 675, 682 (Ga. 2020) (noting "'a clear public policy in favor of arbitration") (internal citation omitted); *Tallman v. Eighth Jud. Dist. Ct.*, 131 Nev. 713, 720 (Nev. 2015) (noting "Nevada's fundamental policy favoring the enforceability of arbitration agreements").

## B.    The Arbitration Agreement satisfies Florida, Georgia, and Nevada law.

Whether or not the FAA applies, to assess validity of arbitration agreements, courts apply ordinary state-law contract principles. *Jajack v. New York Life Ins. Co.*, No. 20-CV-01590-MEH, 2020 WL 8269316, at *3 (D. Colo. Dec. 28, 2020) ("The Court applies state law to determine whether an arbitration agreement is enforceable."). Because Florida, Georgia, and Nevada are where the respective Arbitration Opt-Ins lived, signed their agreements, worked for TTEC, and agreed to hold any arbitrations, those states' laws govern the validity of the Arbitration Agreements. *See, e.g., Levine v. Vitamin Cottage Nat. Food Markets, Inc.*, No. 20-CV-00261-STV, 2021 WL 4439800, at *5 (D. Colo. Sept. 27, 2021) (applying laws of opt-ins' state in granting motion to compel arbitration). Each state strongly favors arbitration. *See* Section III.A.

Each of the states in which Arbitration Opt-Ins worked and resided generally follow the basic hornbook contract law on offer, acceptance, and consideration for arbitration

agreements. *See, e.g., Eyth v. Spectrum Charter Commc'ns, Inc.*, No. 8:23-CV-1878-CEH-TGW, 2024 WL 1833011, at *6 (M.D. Fla. Apr. 26, 2024) ("In Florida, the party seeking to enforce a contract must prove the following elements by a preponderance of the evidence: "offer, acceptance, consideration[,] and sufficient specification of essential terms."); *Green v. CVS Health*, No. 3:23-CV-00076-TES, 2023 WL 7287202, at *1 (M.D. Ga. Nov. 3, 2023) ("The formation of an arbitration agreement is controlled by Georgia contract law, which requires a definite offer and complete acceptance for consideration."); *El Jen Med. Hosp., Inc. v. Tyler*, 139 Nev. Adv. Op. 36, 535 P.3d 660, 665 (Nev. 2023) ("An enforceable arbitration agreement requires offer, acceptance, meeting of the minds, and consideration."). Those elements are clearly satisfied in the present case, where each Arbitration Opt-In had ample time to review the agreement, voluntarily chose to accept its terms, and received employment as consideration. *See, e.g., Balcom v. Seattle Serv. Bureau, Inc.*, No. 8:23-CV-1624-VMC-AAS, 2024 WL 1239258, at *3 (M.D. Fla. Mar. 22, 2024) ("continued employment of Mr. Balcom served as sufficient consideration for the arbitration agreement"); *Kindred v. Second Jud. Dist. Ct. ex rel. Cnty. of Washoe*, 116 Nev. 405, 411, 996 P.2d 903, 907 (Nev. 2000); *Smith v. Sanders Realty Holdings, LLC*, No. 120CV03617ELRCMS, 2021 WL 2651816, at *4 (N.D. Ga. Jan. 15, 2021) ("in the arbitration agreement context, [] continued employment after an employer imposes a term or condition upon employment demonstrates the acceptance and consideration necessary to form an enforceable contract") (citation omitted).

**C.    The Arbitration Agreement is neither procedurally nor substantively unconscionable.**

TTEC suspects the Arbitration Opt-Ins may claim unconscionability. Such claims should be addressed by the arbitrator. Arb. Agmt. ¶ 1.3 ("The arbitrator, and not any … court … shall have the exclusive authority to resolve any dispute relating to the validity,

applicability, enforceability, unconscionability or waiver of this Agreement"). Should the Court nevertheless examine such claims, in Florida and Nevada, "both procedural and substantive unconscionability must be shown to invalidate a contract as unconscionable." *Jenkins-Naudain v. ABM Indus., Inc.*, No. 222CV01826CDSNJK, 2023 WL 4636887, at *4 (D. Nev. July 20, 2023) (granting motion to compel arbitration); *MacMullin v. Findlay*, No. 3D23-1703, 2024 WL 3586850, at *1 (Fla. Dist. Ct. App. July 31, 2024) (same); *Park v. E\*TRADE Fin. Corp. Servs., Inc.*, No. 2:23-CV-69-RWS, 2023 WL 11779917, at *6 (N.D. Ga. July 25, 2023) (same). The Arbitration Agreement is neither procedurally nor substantively unconscionable.

### 1.     The Arbitration Agreement is Procedurally Fair.

"Procedural unconscionability generally concerns a party's failure to reasonably inform another about the consequences of a contract." *Jenkins-Naudain*, 2023 WL 4636887, at *4; *see also Payne v. Savannah Coll. of Art & Design, Inc.*, 81 F.4th 1187, 1194 (11th Cir. 2023) ("Under Georgia law, procedural unconscionability addresses the process of making the contract"); *Mazile v. Larkin Univ. Corp.*, No. 1:23-CV-23306, 2024 WL 3495320, at *3 (S.D. Fla. July 22, 2024) ("Procedural unconscionability focuses on (1) the manner in which the contract was entered into; (2) whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the complaining party had a realistic opportunity to bargain regarding the terms of the contract; and (4) whether he or she had a reasonable opportunity to understand the terms of the contract.").

Here, the Arbitration Agreement is procedurally fair because Plaintiff was not surprised by its terms. The Arbitration Agreement is a stand-alone document, drafted in a regular-sized font, described in plain and straightforward language, which is entitled in

emphasized font, "**ARBITRATION AGREEMENT**." The Arbitration Agreement is linked to the eSignature page, and Arbitration Opt-Ins were required to certify that they reviewed and fully understood the Arbitration Agreement to complete their application documentation. Pfeifer Decl. ¶ 13; Exhibits B, C, E to Pfeifer Decl. The Arbitration Agreement is not buried in other text or hidden in small print. Instead, the arbitration provision is plainly laid out and all in clear font size. For example, the Arbitration Agreement clearly states, in bold letters at the end of the agreement: **"NOTE: Employee understands that by accepting employment and working for TTEC, s/he agrees to the terms and conditions of this Arbitration Agreement."** Arb. Agmt. p. 6.

Nor can the Arbitration Agreement be described as oppressive. Procedural unconscionability may be found, for example, where there is oppression arising from unequal bargaining power combined with surprise arising from hidden or buried terms in a long or complex printed form. Arbitration Opt-Ins voluntarily signed the Arbitration Agreement, and thus freely agreed to waive rights to a trial by judge or jury. There was no oppression because, although Arbitration Opt-Ins did not negotiate the terms of the Arbitration Agreement, they were provided with a meaningful opportunity to review the mutual Agreement. Pfeifer Decl. ¶ 13; see also *Mazile*, 2024 WL 3495320, at *3 (rejecting claim of unconscionability despite plaintiff having "no effective negotiating power to change the terms"). Additionally, the Arbitration Agreement itself advises consultation with an attorney before signing the agreement: "The Employee understands and agrees that Employee has been advised to consult with an attorney of Employee's own choosing before signing this agreement." Arb. Agmt. ¶ 12.0.

### 2.      The Arbitration Agreement is Substantively Fair.

Nevada courts consider the following factors in determining substantive unconscionability: "whether there is '1) [a] neutral arbitrator; 2) more than minimal discovery; 3) [a] written award; 4) [the] types of relief available; and 5) unreasonable costs'". *Jenkins-Naudain*, 2023 WL 4636887, at *4 (citing *Armendariz v. Foundation Health Psychcare*, 6 P.3d 669, 692 (Cal. 2000). Georgia and Florida courts consider similar factors. *See, e.g., Payne,* 81 F.4th 1187, 1194 (noting "commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of risks between the parties, and similar public policy concerns"); *M.P. v. Guiribitey Cosm. & Beauty Inst., Inc.*, No. 3D22-1927, 2023 WL 6450457 (Fla. Dist. Ct. App. Oct. 4, 2023) (substantive unconscionability "relates to the reasonableness of the contractual terms and whether they are so outrageously unfair as to shock the judicial conscience. [] In evaluating this prong, courts consider whether the terms conflict with public interest or policy. This occurs where the agreement is improvident, oppressive, or totally one-sided, or the allocation of payment of arbitration fees stymies access to the tribunal) (internal citations omitted).

Here, (1) The Arbitration Agreement provides for a neutral arbitrator: "The arbitrator shall be selected by mutual agreement of the Parties… If for any reason the parties cannot agree to an arbitrator, the arbitration will be administered by the American Arbitration Association ("AAA), and except as provided in this Agreement, will be under the then current Employment Arbitration Rules of the AAA ("AAA Rules") …" Arb. Agmt. ¶ 3.2.

(2) The Arbitration Agreement provides for more than minimal discovery: "Each party may take the deposition of two individual fact witnesses and any expert witness

designated by another party. Each party may also propound requests production of documents, and each party may subpoena witnesses and documents for discovery or the arbitration hearing, including testimony and documents relevant to the case from third parties. Additional discovery may be conducted by mutual stipulation, and the Arbitrator will have exclusive authority to entertain requests for additional discovery, and to grant or deny such requests, based on the arbitrator's determination whether additional discovery is warranted by the circumstances of a particular case." Arb. Agmt. ¶ 5.

(3) The Arbitration Agreement provides for a written award: "The arbitrator is required to render his or her decision in writing, with an opinion stating the legal and factual bases of his or her decision." Arb. Agmt. ¶ 6.5.

(4) The Arbitration Agreement provides for all of the relief that would otherwise be available in court: "The arbitrator may award any remedy to which a party is entitled under applicable law, but remedies will be limited to those that would be available to a party in their individual capacity for the claims presented to the arbitrator, and no remedies that otherwise would be available to an individual under applicable law will be forfeited. The arbitrator shall apply the substantive federal, state, or local law applicable to the claims asserted. Arb. Agmt. ¶ 6.4.

(5) The Arbitration Agreement does not require Plaintiff to pay costs unique to arbitration: "The arbitrator's fees and costs shall be paid by TTEC to the extent required by controlling law and the AAA Rules, if applicable. Each Party shall be responsible for his or her or its filing fee. The arbitrator will resolve any disputes regarding costs/fees associated with arbitration." Arb. Agmt. ¶ 8.2.

Accordingly, the Arbitration Agreement is both procedurally and substantively conscionable and therefore enforceable under the FAA and, Florida, Georgia, and Nevada law.

Finally, TTEC's Arbitration Agreement has already been enforced by other courts. *See, e.g., Stemmen v. TTEC Gov't Sols., LLC*, No. 2:23-CV-08806-SK, 2024 WL 1641978, at *5 (C.D. Cal. Mar. 7, 2024) (enforcing arbitration agreement, and prohibiting class/collective treatment, with respect to wage and hour employment claims); *Fox v. TTEC Servs. Corp.*, No. 4:19-CV-00037-KGB, 2020 WL 13882107, at *1 (E.D. Ark. Apr. 10, 2020) (same); *Beattie v. TTEC Healthcare Sols., Inc.*, No. 1:18-CV-01574-RM-SKC, 2019 WL 2189481, at *1 (D. Colo. May 21, 2019) (same).

**D.    The Arbitration Opt-ins' class and collective claims are precluded.**

The U.S. Supreme Court recently upheld the validity of class-action waivers in arbitration agreements, explaining that "Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502 (2018). Here, the Arbitration Agreement contains a clear waiver of class and collective action claims, which requires individuals "to bring any dispute in arbitration on an individual basis only, and not on a class and/or collective basis." Arb. Agmt. ¶ 1.4. Because each of the Arbitration Opt-Ins' claims is covered by the Arbitration Agreement and no statute prohibits enforcement of the agreement, they are precluded from asserting these claims on a class or collective basis. As such, the Arbitration Opt-Ins must be compelled to arbitrate these claims on an individual basis.

Indeed, the Arbitration Opt-Ins and their counsel seem prepared to arbitrate. Each consent form filed in this lawsuit states, in pertinent part: "I consent and agree to pursue

my claims for unpaid overtime and/ or minimum wages through a lawsuit *or arbitration* case filed against TTEC Services Corporation. … In the event my claim must be brought in arbitration, *I authorize Plaintiff's counsel to file a claim for arbitration* on my behalf." ECFs 11-1, 11-2, 12-1, each at ¶¶ 1, 4 (emphasis added).

## IV.    CONCLUSION

The Arbitration Opt-Ins entered into an Arbitration Agreement that compels the individual arbitration of all employment-related claims and bars asserting such disputes as a putative class or collective action. Accordingly, TTEC requests the Court grant this motion to compel individual arbitration, dismiss each Arbitration Opt-In from the lawsuit, and grant such other relief in its favor as the Court deems appropriate.

DATED: September 27, 2024                    Respectfully submitted,


*/s/ Arthur J. Rooney*
Arthur J. Rooney
Perkins Coie LLP
110 North Wacker, Suite 3400
Chicago, IL 60606
Telephone: 312-263-5071
Facsimile: 312-324-9516
Email: ARooney@perkinscoie.com

Daniel Graham
Perkins Coie LLP
1900 Sixteenth Street, Suite1400
Denver, CO 80202
Telephone: 303-291-2300
Facsimile: 303-291-2400
Email: DGraham@perkinscoie.com


*Attorneys for Defendant*

## **CERTIFICATE OF CONFERRAL**

I, Arthur J. Rooney, certify, pursuant to D.C.COLO.LCivR 7.1(a), that I conferred in good faith with counsel for Plaintiff and the Arbitration Opt-Ins regarding the relief requested in this motion. More specifically, I conferred with counsel for Plaintiff and the Arbitration Opt-Ins on September 17, 19, 20, and 24, 2024, via email. Counsel for Plaintiff and the Arbitration Opt-Ins stated they object to Defendant's request to compel arbitration.

*/s/ Arthur J. Rooney*
Arthur J. Rooney

## **CERTIFICATE OF SERVICE**

I, Arthur J. Rooney, hereby certify that on September 27, 2024, I electronically filed a true and correct copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

*/s/ Arthur J. Rooney*
Arthur J. Rooney