IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-01076-CNS-KAS

DEREK WILFONG, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

TTEC SERVICES CORPORATION,

    Defendant.

# ORDER

Plaintiff Derek Wilfong moves for conditional certification of his proposed collective action, expedited opt-in discovery, and Court-authorized notice to potential opt-in Plaintiffs. ECF No. 18. Defendant TTEC Services Corporation opposes. ECF No. 33. For the reasons below, the Court GRANTS in part and DENIES in part Plaintiff's motion.

## I. INTRODUCTION

### A. Factual Background

Plaintiff initiated this action as a collective action against TTEC, alleging that TTEC has a practice and policy of not paying its nonexempt employees for all hours worked, including overtime pay for hours worked in excess of 40 hours per week. ECF No. 1, ¶ 1. In particular, Plaintiff complains that TTEC failed to compensate its customer service representatives for the time required to boot up, login, and shut down their computers and

1

phone systems. *Id.*, ¶ 28. Plaintiff pursues his claims as the Representative Plaintiff, on behalf of himself and others similarly situated. He brings his suit under the Fair Labor Standards Act (FLSA). *Id.*, ¶¶ 1, 3.

### B. The FLSA – Conditional Certification in the Tenth Circuit

The FLSA governs how certain employers must compensate employees for minimum wage and overtime. *See* 29 U.S.C. §§ 206–07. The statute requires covered employers to pay employees for all hours worked and, in most cases, to provide overtime compensation for work beyond 40 hours per week. *See* 29 U.S.C. §§ 206(a), 207(a). Overtime compensation must be paid at one and a half times the employee's "regular rate" of pay. 29 U.S.C. § 207(e). The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ." 29 U.S.C. § 203(d).

Section 216(b) of the FLSA allows private individuals to seek damages for minimum wage and overtime violations, providing that

> [a]n action to recover the liability [for unpaid minimum wages or unpaid overtime compensation] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.

29 U.S.C. § 216(b). Plaintiffs may proceed collectively,[1] which allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."

---

[1] As Judge Wang has aptly explained, a "collective action under the FLSA is an animal distinct and separate from a class action that proceeds under Rule 23." *Peterson*, 2018 WL 3470604, at *1. Thus, like Judge Wang and other courts in this District, the Court favors the use of "collective" rather than "class," when referring to the FLSA collective.

2

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (interpreting the Age Discrimination in Employment Act of 1967 (ADEA), which expressly incorporates enforcement provisions of the FLSA). Plaintiffs seeking to join an FLSA collective action must affirmatively opt in. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

In *Thiessen v. General Electric Capital Corporation*, the Tenth Circuit approved a two-step process, known as the "*ad hoc* approach," for determining whether putative collective action members are "similarly situated" to the named plaintiff. 267 F.3d 1095, 1105 (10th Cir. 2001) (acknowledging that § 216(b) does not define the term similarly situated). Under the *ad hoc* approach, the trial court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (*quoting Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). The court may rely on the "allegations of the complaint and any supporting affidavits filed by the plaintiff." *Peterson v. Nelnet Diversified Sols., LLC*, No. 17-CV-01064-NYW, 2018 WL 9662030, at *3 (D. Colo. Feb. 2, 2018) (citing *Brown v. Money Tree Mortgage, Inc.*, 222 F.R.D. 676, 680 (D. Kan. 2004)). The standard for conditional certification is a "lenient" one, which "typically results in class certification." *Warren v. MBI Energy Servs., Inc.*, No. 1:19-CV-00800-RM-STV, 2020 WL 5640617, at *1 (D. Colo. Sept. 22, 2020) (citing and quoting *Norwood v. WBS, Inc.*, No. 15-cv-00622-MSK-KMT, 2016 WL 7666525, at *1 (D. Colo. Sept. 29, 2016)). Still, the

3

movant must demonstrate that opt-in plaintiffs are similarly situated. *Peterson*, 2018 WL 9662030, at *3.

During the second stage of the *ad hoc* approach—typically after discovery and often triggered by a motion to decertify—the court applies a stricter standard to determine whether the case should proceed as a collective action. *Id.* In particular, the court "reviews several factors, including '(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required by the [the statute] before instituting suit.'" *Thiessen*, 267 F.3d at 1103 (quoting *Vaszlavik,* 175 F.R.D. at 678). Numerous courts in this District have applied the *ad hoc* approach in considering whether plaintiffs can move forward collectively under the FLSA. *See, e.g.*, *Morris v. MPC Holdings, Inc.*, No. 20-cv-2840-CMA-NYW, 2021 WL 4124506, *2 (D. Colo. Sept. 9, 2021); *Buffington v. Ovintiv USA Inc.*, No. 20-cv-2477-RM-STV, 2021 WL 3021464, *2–4 (D. Colo. July 16, 2021); *Green v. Perry's Rest. Ltd*, No. 21-cv-23-WJM-NRN, 2022 WL 16744795, *3 n.4 (D. Colo. Nov. 7, 2022); *Peterson*, 2018 WL 9662030, at *3. Trial courts generally avoid considering the merits of the underlying collective action in making certification decisions. *Buffington*, 2021 WL 3021464, at *2 (citing *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir. 1988)).

Here, Defendant argues that the Court should deviate from the *ad hoc* approach and apply a stricter standard endorsed by the Fifth Circuit in *Swales v. KLLM Transportation Services, L.L.C.*, 985 F.3d 430 (5th Cir. 2021). ECF No. 33 at 2–5. The *Swales* court held that the *ad hoc* approach runs counter to the FLSA. *See Swales*, 985

4

F.3d at 434–43. The panel explained that "a district court should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.' And then it should authorize preliminary discovery accordingly." *Id*. at 441. "[A]ddressing these issues from the outset aids the district court in deciding whether notice is necessary. And it ensures that any notice sent is proper in scope—that is, sent only to potential plaintiffs." *Id*. at 442.

Like other courts in this District, the Court respectfully declines to deviate from the *ad hoc* approach endorsed by the Tenth Circuit. *See Green*, 2022 WL 16744795, *3 n.4 (rejecting the defendant's invitation to follow *Swales*); *Morris*, 2021 WL 4124506, *2 (same); *Buffington*, 2021 WL 3021464, *2–4 (same); *Fuentes v. Compadres, Inc.*, No. 17-CV-01180-CMA-MEH, 2018 WL 2126840, at *2 (D. Colo. May 9, 2018) (finding that "this Court is bound by long-standing Tenth Circuit precedent mandating the application of the two-step conditional certification process for collective actions brought under the FLSA." (citing *Thiessen*, 267 F.3d at 1105)).

    **C.**    **Notice to the Conditional Class**

As stated earlier, the FLSA mandates that "[n]o employee shall be a party plaintiff to any [collective] action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). A court may authorize a plaintiff to distribute notices and opt-in consent forms to potential collective action members to ensure that they are informed of the lawsuit. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989). "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and

5

timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *MacDonald v. Covenant Testing Techs., LLC*, No. 18-cv-02290-NRN, 2019 WL 1755282, at *6 (D. Colo. Apr. 18, 2019) (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)); *Levine v. Vitamin Cottage Nat. Food Mkts. Inc.*, No. 20-cv-00261-STV, 2020 WL 6546734, at *4 (D. Colo. Nov. 6, 2020) ("Notice to FLSA collective action members must 'contain accurate information concerning the collective action so that potential plaintiffs can make informed decisions as to their participation.'" (quoting *Armijo v. Star Farms, Inc.*, No. 14-cv-01785-MSK-MJW, 2015 WL 13310426, at *2 (D. Colo. Dec. 14, 2015)). An FLSA notice should describe the nature of the collective action and provide recipients with the opportunity to opt in by submitting a consent form.

An FLSA notice should describe the nature of the FLSA collective action and offer the recipient the opportunity to opt in to the action by filing a consent form. *Bowling v. DaVita, Inc.*, No. 21-CV-03033-NYW-KAS, 2023 WL 6443879, at *2 (D. Colo. Oct. 3, 2023). The notice "should also advise recipients of their right to be represented by counsel for the original plaintiff, to obtain independent representation, or to participate *pro se*," and it should also explain "certain rights of an 'opt-in' plaintiff, including the right not to be bound by a settlement that the original plaintiff advocates." *Id.* (quoting *Pena v. Home Care of Denver, LLC*, No. 19-cv-00069-CMA-NYW, 2019 WL 5577947, at *2 (D. Colo. Oct. 29, 2019)).

The Court has "broad discretion regarding the details of the notice sent to potential opt-in plaintiffs." *Lindsay v. Cutters Wireline Serv., Inc.*, No. 17-cv-01445-PAB-KLM, 2018

6

WL 4075877, at *3 (D. Colo. Aug. 27, 2018) (citing *Hoffmann-LaRoche*, 493 U.S. at 171). This discretion requires a court to ensure that the notice is "fair and accurate," but the discretion does not extend so far as to permitting a court to alter the plaintiff's proposed notice "unless such alteration is necessary." *Bowling*, 2023 WL 6443879, at *2 (quoting *Creten-Miller v. Westlake Hardware, Inc.*, No. 08-2351-KHV, 2009 WL 2058734, at *2 (D. Kan. July 15, 2009)).

### IV.   ANALYSIS

Plaintiff moves for conditional certification of the following collective:

> All former and current customer service representatives, and persons with jobs performing substantially identical functions and/or duties to customer service, employed by TTEC Services Corporation in the United States at any time between [three years from date of this order] and the present.

ECF No. 37-1. As of the date Plaintiff filed his motion for conditional certification, five individuals have consented to join this action as opt-in Plaintiffs. ECF No. 18 at 2; ECF No. 18-3 (declarations of the five opt-in Plaintiffs); ECF No. 33 at 1. One opt-in Plaintiff, Samantha Heuerman, has since withdrawn her consent. ECF No. 47.

### A.   Whether Plaintiff has made substantial allegations that the putative class is similarly situated

The Court first looks at Plaintiff's complaint to consider whether he has made substantial allegations that the putative class is similarly situated. *Thiessen*, 267 F.3d at 1103. Plaintiff alleges as follows:

> (1)   That the putative FLSA collective members were all employed by TTEC as customer service representatives or in positions performing the same or substantially identical functions or duties as customer service representatives and were subject

7

|     |     |
| --- | --- |
|     | to the same policies and procedures, ECF No. 1, ¶¶ 20–21, 61; |
| (2) | That each member was classified as a nonexempt employee *id.*, ¶ 23; |
| (3) | That each member was paid an hourly wage, *id.*, ¶ 24; |
| (4) | That each member was scheduled to work 40 hours per week but regularly worked in excess of 40 hours per week, *id.*, ¶¶ 25–27; |
| (5) | That TTEC subjected the members to the same policies and practices of only paying them for work performed while completely logged in to TTEC's computer systems, software applications, and phone system, *id.*, ¶¶ 28–48; and |
| (6) | That the members regularly worked more than 40 hours per workweek, and the unpaid work was in addition to the 40 or more hours they worked while clocked-in for their scheduled shift, *id.*, ¶¶ 35, 44, 50. |

Plaintiff supports these allegations with sworn declarations from Plaintiff and the four opt-in Plaintiffs. ECF No. 18-2 (Decl. of Plaintiff); ECF No. 18-3 (Decl. of Bennett, Davis, Decicco, and Knox). Each individual claims that they are similarly situated and were subject to the same practice and policy, stating that they all were (i) employed by TTEC Services Corporation as (ii) TTEC customer service representatives who (iii) regularly worked more than 40 hours per week without being paid overtime and who (iv) spent time each workday shutting down and logging out of the computer systems, software applications, and phone systems without being compensated for that time.

Defendant opposes conditional certification, making three broad arguments. ECF No. 33 at 5–10. The Court addresses each in turn. First, Defendant argues that Plaintiff's allegations and the declarations are conclusory and that "none of the opt-ins provide any

estimate of how many hours they actually worked per week, or of how much uncompensated or undercompensated time they allegedly worked in a day or week." *Id.* at 5–7. Defendant goes on to argue that "Plaintiff and the opt-ins worked under different managers, worked on different client contracts, and used different applications, programs, systems, and startup/shutdown processes depending on their client, team, and manager." *Id.* at 7. The Court is not persuaded.

Although it is true that the opt-in Plaintiffs did not provide a specific estimate of how many hours they actually worked per week, each declared that they regularly worked more than 40 hours per week. And true, the declarations for each opt-in Plaintiff are nearly identical, which the Court does not condone. But there is nothing to suggest that the opt-in Plaintiffs are not being truthful. Nor does Defendant dispute that each opt-in Plaintiff is a customer service representative. *See* ECF No. 33 at 1. Finally, whether the opt-in Plaintiffs had different managers and worked on different client contracts is more appropriate for the decertification stage. *See Thiessen*, 267 F.3d at 1103 (explaining that district courts should analyze the "disparate factual and employment settings of the individual plaintiffs" in the second stage (citation omitted)); *Kovacs v. G4S Secure Sols. (USA) Inc.*, No. 20-CV-3180-RMR-KMT, 2022 WL 1402097, at *3 (D. Colo. Jan. 18, 2022) ("Defendant here raises factual arguments regarding the individual circumstances of each potential opt-in plaintiff. While such arguments may become relevant at the second stage of the certification process, the Court does not consider them here. At this stage, the Court need only consider the substantial allegations of the complaint, including any supporting affidavits." (citing *Thiessen*, 267 F.3d at 1102)); *Coldwell v. RiteCorp Env't*

9

*Prop. Sols.*, No. 16-CV-01998-NYW, 2017 WL 4856861, at *4 (D. Colo. July 20, 2017) ("It is not necessary, at this step in the process, to consider the exact factual setting of the policy—for example, the coworkers involved, the managers involved, the number of hours worked overtime, and the exact implementation of the unwritten policy." (citation and quotation omitted)).

Second, Defendant argues that, because some (but not all) of the opt-in Plaintiffs signed arbitration agreements, certification would be inappropriate. ECF No. 33 at 8. Relying on caselaw from the Fifth, Sixth, and Seventh Circuits, Defendant urges the Court to address the issue at the notice stage. *Id.* at 9 The Court declines to do so. Whether members of the putative FLSA collective "are subject to arbitration agreements should be raised at the second stage of the certification analysis." *Judd v. Keypoint Gov't Sols., Inc.*, No. 18-cv-00327-RM-STV, 2018 WL 7142193, *12 (D. Colo. Dec. 4, 2018); *Beattie v. TTEC Healthcare Sols., Inc.*, 1:18-cv-03098-RM-NRN, 2019 WL 2866559, *1 (D. Colo. July 3, 2019) ("The fact that some Plaintiffs will be compelled to arbitrate their claims individually does [not ]establish grounds for denying them notice."). Moreover, courts in this District and elsewhere have held that the issue of arbitration generally is irrelevant to the "similarly situated" inquiry. *Judd v. KeyPoint Gov't Sols., Inc.*, No. 18-CV-00327-RM-STV, 2018 WL 4383037, at *11 (D. Colo. July 30) ("Courts have held that the execution of arbitration agreements by some opt-in plaintiffs is not an indication that those plaintiffs are not similarly situated to the named plaintiffs who did not sign such agreements." (citing *Williams v. Omainsky*, No. 15-0123-WS-N, 2016 WL 297718, at *7 (S.D. Ala. Jan. 21, 2016), *report and recommendation adopted*, No. 18-CV-00327-RM-STV, 2018 WL

10

7142193 (D. Colo. Dec. 4, 2018)); *id.* (citing *Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 526 (S.D.N.Y. 2015) ("[T]he fact that some of the contracts have arbitration provisions . . . [does not] create any differences between plaintiffs and other [potential plaintiffs] with respect to whether defendants violated the FLSA.")).

Third, Defendant argues that certification should be limited to employees on the Nissan North America team in Ohio, where Plaintiff worked, or, at minimum, relevant employees who worked for TTEC in Ohio. ECF No. 33 at 10. The Court again disagrees. Courts in this District "routinely allow company-wide notice at this stage of litigation . . . ." *Gordineer v. Rocky Mountain Offender Mgmt. Sys.*, No. 12-CV-1212-JLK, 2013 WL 179327, at *3 (D. Colo. Jan. 17, 2013) (collecting cases); *see also Smith v. Pizza Hut, Inc.*, No. 09-CV-01632-CMA-BNB, 2012 WL 1414325, at *6 (D. Colo. Apr. 21, 2012) (rejecting the defendant's request to geographically limit the class to the locations where the plaintiff and opt-in plaintiffs were employed; the "fact that delivery drivers from every region have not yet opted into this action does not mean that a nationwide class cannot exist").

Moreover, Plaintiff and the opt-in Plaintiffs declared that they talked with other customer service representatives and attended video conferences during which others complained to trainers and supervisors about the same unpaid work. Defendant argues that the Court should not consider such hearsay statements. ECF No. 33 at 5–7. This cannot be. "Courts within the Tenth Circuit have relied upon a plaintiff's discussions with others to find that there are substantial allegations that the plaintiff(s) and the putative opt-in plaintiffs were together the victims of a single decision, policy, or plan." *Stallings*,

11

2018 WL 1250610, *3 (collecting cases). Holding Plaintiff to the Federal Rules of Evidence standards at the notice stage would fail to consider that Plaintiff has not yet been afforded an opportunity, through discovery, to test the factual basis for his case. As one court said, the "fact that plaintiff has not yet identified the co-workers with whom he spoke is not a bar to first stage conditional certification, as plaintiff is not required to prove his claim at this stage." *Sharp v. CGG Land (U.S.) Inc.*, No. 14-CV-0614-CVE-TLW, 2015 WL 222486, at *3 and *2 n.4 (N.D. Okla. Jan. 14, 2015) (explaining that the notice stage requires a plaintiff to provide "substantial allegations, not evidence, that the potential class members are similarly situated" (quotation omitted)).

In sum, the Court rejects Defendant's three arguments and finds that Plaintiff's allegations, his declaration, and the opt-in Plaintiffs' declarations, taken together, are sufficient to warrant conditional certification under the FLSA. Each Plaintiff stated that they are (or were) TTEC customer service representatives subject to the same pay practice. The Court thus has no trouble concluding that Plaintiff has carried his minimal burden at the notice stage of asserting "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Thiessen*, 267 F.3d at 1102.

**B.    Whether Notice is Sufficient**

Plaintiff also moves the Court to approve his proposed notice. *See* ECF No. 37-1 (revised notice addressing some of Defendant's concerns). He asks the Court to permit notice via email and regular mail. ECF No. 18 at 15.

12

Defendant raises 12 objections to the (initial) proposed notice. ECF No. 33 at 11–15. The Court has already rejected some of Defendant's objections (e.g., whether individuals allegedly subject to arbitration agreements should receive notice, whether notice should be limited to Ohio workers, etc.). And for other objections, Plaintiff has revised his proposed notice in response to Defendant's objections. *See* ECF No. 37-1. Still, Defendant asks the Court to allow the parties to negotiate certain language in the notice. ECF No. 33 at 13. In some instances, such as Plaintiff's characterization of Defendant's position, the Court finds Defendant's request reasonable. *See Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 129 (E.D.N.Y. 2020) (ordering parties to negotiate revised language where notice "does not contain sufficient language expressing [Defendant]'s position"); *Morris*, 2021 WL 4124506, *4 (orderings parties to "confer in an attempt to agree on the form of the reminder notice").

Moreover, the Court is also persuaded by Defendant's argument that the notice should state that *some* collective members *may be* subject to arbitration agreements precluding their participation in the lawsuit. *See Daniel v. Stericycle Inc.*, No. 320CV00655RJCDCK, 2022 WL 16758227, at *4 (W.D.N.C. Oct. 11, 2022) (approving reference to arbitration agreements in FLSA notice collective definition). The Court also finds this request reasonable. In at least one place in the revised notice, Plaintiff states that "[y]ou also have a right to join this action. . . ." ECF No. 37-1 at 2 (but in other places, qualifying that potential opt ins have a right to join if they are "eligible to participate"). But that may be wrong if some employees entered valid arbitration agreements. Thus, without

13

at least mentioning that some employees may be subject to arbitration agreements, the Court cannot conclude that the "notice is fair and accurate."[2]

Accordingly, although the Court generally finds that the notice is fair and accurate, the Court directs the parties to engage in a good-faith meet-and-confer to address the above issues and objections. After the meet-and-confer, Plaintiff shall submit a revised proposed notice within 14 days of this Order. Should any objections remain, the parties shall file position papers setting forth the disputes and their arguments, not to exceed three pages, within 14 days of this order.[3]

### C.    Whether Opt-In Discovery is Appropriate

Through a single interrogatory, Plaintiff seeks the name, address, phone number, email address, and employment dates of all former and current customer service representatives within the last three years. ECF No. 18 at 14; ECF No. 18-4 (Interrogatory No. 1). Defendant objects, arguing that the Court should consider whether some opt-in Plaintiffs are barred from receiving notice prior to granting conditional certification. ECF No. 33 at 15. The Court finds that opt-in discovery is appropriate.

Courts in this District routinely order defendants to produce this basic information to facilitate the notice process. *See Green*, 2022 WL 16744795, *6; *Beattie*, 2019 WL

---

[2] As explained above, the Court will not address the binding nature of the arbitration agreements until the second stage. However, should Plaintiff request expedited ruling on the issue in light of this order, he should file a notice withdrawing his motion to stay briefing on Defendant's motion to compel arbitration. ECF No. 39. Upon receiving that notice, the Court would set a briefing schedule on Defendant's motion to compel arbitration. ECF No. 38.

[3] Plaintiff seeks to issue notice to potential opt ins by email and regular mail. Defendant opposes, arguing that regular mail is sufficient. In this case, the Court sees no reason why Plaintiff should be limited to providing notice by regular mail. *See Beattie v. TTEC Healthcare Sols.*, Inc., No. 1:18-CV-03098-RM-NRN, 2019 WL 2866559, at *2 (D. Colo. July 3, 2019) (permitting notice by e-mail and text message as well as by regular mail).

2866559, *3. Accordingly, Defendant shall respond to Plaintiff's single interrogatory within 14 days of this order.[4]

## V.  CONCLUSION

Consistent with the above analysis, the Court makes the following rulings:

(1)  Plaintiff's motion for conditional certification, expedited opt-in discovery, and Court-authorized notice to potential opt-in Plaintiffs, ECF No. 18, is GRANTED in part and DENIED in part;

(2)  The parties are ordered to meet-and-confer on a revised notice; and

(3)  Defendant shall respond to Plaintiff's opt-in discovery consistent with this order.

DATED this 21st day of February 2025.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge

---

[4] The Court notes that Plaintiff does not seek to notify potential opt-in Plaintiffs via phone call. The Court thus fails to see why Plaintiff is entitled to the last known phone number for each customer service representative. Defendant, therefore, need not provide this information.